UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL WEBB,

                Plaintiff,

   -v-

AMILI, INC.,

                Defendant.

No. 08 Civ. 9976 (RJS)
MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Michael Webb brings this diversity action alleging a state law claim for negligence against Defendant Amili, Inc. Before the Court is Defendant's motion for summary judgment, brought pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons stated below, Defendant's motion is granted and this case is dismissed.

I. BACKGROUND

A. Facts[1]

1. The Parties

Plaintiff is an employee at the Food Emporium located at 2008 Broadway at 68th Street in New York, New York (the "Demised Premises"). (Def.'s 56.1 ¶ 9.) Defendant has owned the Demised Premises since January 12, 1988, and the Demised Premises have been leased to the Great Atlantic & Pacific Tea Co. ("A&P") since that same date. (*Id.* ¶¶ 35-37.)

---

[1] The following facts are taken from the pleadings, the Parties' Local Rule 56.1 Statements, the affidavits submitted in connection with the instant motion, and the exhibits attached thereto. The facts are undisputed unless otherwise noted. Where only one Party's 56.1 Statement is cited, the facts are taken from that Party's statement, and the other Party does not dispute the fact asserted or has offered no admissible evidence to refute that fact.

2. The Slip and Fall

This action is predicated on a "slip and fall" suffered by Plaintiff.  (*Id.* ¶ 6; *see also* Def.'s 56.1 Ex. F at 15:2-5.)  As set forth by Plaintiff in his July 23, 2009 deposition, the accident occurred around 1:30 p.m. on June 27, 2005 in the men's bathroom on the basement level of the Demised Premises.  (Def.'s 56.1 Ex. F at 15:2-15.)  Specifically, Plaintiff was "going to the bathroom to use the bathroom," took "[l]ike three steps" towards a urinal in the bathroom, "did [his] business," "turned around," took "half" a step, and then slipped on "[w]ater that [was] leaking from the urinal, or it could [have] be[en] urine . . . [i]t could have been mixed."  (*Id.* at 15:20-21; 42:17-43:22; 46:16-19.)  Plaintiff testified that he had previously noticed water leaking from the "handle of the urinal" "practically every day."  (*Id.* at 51:7-52:4.)  Plaintiff further testified that he had noticed "puddles or fluid or water" on the floor of that bathroom prior to the date of the accident, and specified that "[m]ost of the time," the puddles were in the spot on which he had slipped, but that at "times[,] they were in different spots."  (*Id.* at 50:8-15.)  When asked whether Plaintiff had noticed any "other problems with the bathroom" beyond water leaking from the urinal handle, Plaintiff elaborated that he had also witnessed a "[leak] in the urinal, on the toilet, the commode."  (*Id.* at 55:21-56:14.)  Plaintiff summarized the overall condition of the bathroom as follows: "Sometimes, you know, to me, it's appropriate. Sometimes it's not."  (*Id.* at 55:19-20.)

3. The Lease and the Rider

As noted, the Demised Premises have been leased by Defendant to A&P since January 12, 1988.  (Def.'s 56.1 ¶¶ 35-37.)  Two relevant documents govern that lease:  a lease, dated June 5, 1985 (the "Lease"), and a rider to that lease, dated June 6, 1985 (the "Rider").  (See Def.'s 56.1 Ex. H.)  Several sections of the Lease and the Rider are relevant to this litigation.

>Section 10 of the Lease provides that:
>
>Access to Premises: Tenant shall permit Landlord or Landlord's agents and designees to enter upon the Demised Premises at all reasonable times (a) to make repairs, replacements and restorations to the Demised Premises which are required to be made by Landlord, (b) to make repairs, replacements and restorations to conduits, pipes, utilities and structural installations, including columns, serving the Tower, which repairs, replacements and restorations can only be made through the Demised Premises, and (c) to exhibit the Demised Premises to prospective purchasers and prospective tenants, but in the latter case only during the last twelve (12) months of the term of this Lease.

(Pl.'s 56.1 ¶ 58; *see also* Def.'s 56.1 Ex. H.)

>Section 7 of the Rider provides, in relevant part, that
>
>Section 7 of the Lease (which Section pertains to improvements, repairs, alterations and replacements respectively) is hereby deleted and the following Section is hereby substituted in its place and stead:
>
>Section 7.  Improvements, Repairs, Alterations, Replacements:  (a)(i) Tenant shall make all necessary replacements of . . . and all necessary interior non-structural repairs and replacements to the Demised Premises including without limitation repairs to the heating, ventilating and air conditioning system, to the interior plumbing and portions of the electrical systems for the point at which the separate service is provided for the Demised Premises in the Demised Premises or in the basement of the New Building.

(Def.'s 56.1 ¶¶ 45-46; *see also* Def.'s 56.1 Ex. H.)

>The Rider further provides that:
>
>(a)(ii)  Landlord shall make . . . all structural repairs and replacements and all repairs and replacements to the exterior (except as provided above with respect to the plate glass and window and door frames) and floor of the Demised premises . . . (but not the floor covering).  The Declaration shall require the Condominium Board to make all necessary repairs and replacements to the water, sewer, and electrical system serving the demised premises up to the point and including the point at which the separate service is provided for the Demised Premises in the Demised Premises or in the basement of the New Building . . . ."

(Def.'s 56.1 ¶ 47; *see also* Def.'s 56.1 Ex. H.)

B.  Procedural History

Plaintiff commenced this action in New York Supreme Court on June 5, 2008.  (Def.'s 56.1 ¶ 1.)  The case was removed to this Court on November 18, 2008.  (Doc. No. 1.)[2]  After the conclusion of discovery, Defendant filed its motion for summary judgment and accompanying memorandum of law on September 25, 2009 ("Def.'s Mem.").  (Doc. Nos. 25-28.)  On October 9, 2009, Plaintiff filed his opposition memorandum ("Pl.'s Opp'n").  (Doc. Nos. 29-31.)  Defendant filed an "affirmation" in reply on October 22, 2009 ("Def.'s Reply").  (Doc. No. 33.)

II.  STANDARD OF REVIEW

The standards for summary judgment are well settled.  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may not grant a motion for summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 96 (2d Cir. 2007).  The moving party bears the burden of showing that he or she is entitled to summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson*, 477 U.S. at 248 (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a

---

[2] Although A&P was originally a party to this action, by stipulation dated July 30, 2009, Plaintiff consented to the dismissal of its claims against A&P, and Defendant Amili consented to the dismissal of its cross claims against A&P.  (Doc. No. 20; *see also* Def.'s 56.1 ¶ 5.)

verdict for the nonmoving party"); *Rivkin v. Century 21 Teran Realty LLC*, 494 F.3d 99, 103 (2d Cir. 2007). As such, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

### III. DISCUSSION

Under New York law, "[i]t is well settled that an out-of-possession owner or lessor is not liable for injuries that occur on the premises unless that entity retained control of the premises or is contractually obligated to repair the unsafe condition." *Carvano v. Morgan*, 703 N.Y.S.2d 534, 534 (2nd Dep't 2000).[3] An out-of-possession landlord may also be held liable if it "has a contractual right to reenter, inspect and make needed repairs and liability is based on a significant structural or design defect that is contrary to a specific statutory safety provision." *Vasquez v. Rector*, 835 N.Y.S.2d 159, 159 (1st Dep't 2007).

The undisputed facts demonstrate that Defendant is an out-of-possession landlord that has relinquished control of the property to the tenant A&P. (Def.'s 56.1 ¶¶ 35-37.) The undisputed facts also demonstrate that Defendant has a contractual right to reenter the Demised Premises "to make repairs, replacements and restorations to the Demised Premises which are required to be made by Landlord." (Def.'s 56.1 Ex. H.) Accordingly, Defendant may only be held liable for negligence in this matter (1) if it was contractually obligated to repair the unsafe

---

[3] Both parties rely solely on New York law in their moving papers. Where the parties' briefs assume that New York law controls, such "implied consent" is sufficient to establish choice of law. *Nat'l Utility Serv., Inc. v. Tiffany & Co.*, No. 07 Civ. 3345 (RJS), 2009 WL 755292, at *6 n.6 (S.D.N.Y. Mar. 20, 2009)

condition that caused Plaintiff's accident, or (2) if liability is based on a "significant structural or design defect that is contrary to a specific statutory safety provision." Here, these two analyses overlap, as Defendant was only contractually obligated to make "structural repairs and replacements." (Def.'s 56.1 Ex. H.)[4]

The Court finds that there is no evidence in the record to support a reasonable inference that Plaintiff's injury resulted from either a defect requiring a "structural repair[] and replacement[]" as set forth in the Lease and Rider, or a "significant structural or design defect that is contrary to a specific statutory safety provision" as required when relying on a right of reentry as a predicate for liability. The only evidence in regard to the cause of the offending puddle is Plaintiff's deposition testimony, which attributes Plaintiff's injury to "[w]ater that's leaking from the urinal, or it could be urine . . . [i]t could have been mixed." (Def.'s 56.1 Ex. F at 43:22; 46:16-19.) The only "defect" identified by Plaintiff is that water would drip from the handle of the urinal when flushed. (*See id.* at 51:7-14.) Such a defect — a leaky toilet — has been found to fail to constitute a structural defect under New York law. *See Del Rosario v. 114 Fifth Ave. Assocs.*, 699 N.Y.S.2d 19, 19 (1st Dep't 1999) (finding that the "action was properly dismissed on the ground that the leaky toilet did not constitute a substantial structural defect for which the out-of-possession landlord and managing agent were responsible under the lease," and further finding that "[a]n out-of-possession landlord with a general right of reentry is not liable for general maintenance defects"); *cf. Peck v. 2-J, LLC*, 866 N.Y.S.2d 661, 661 (1st Dep't 2008)

---

[4] As set forth above, under the Lease and Rider, Defendant "Landlord shall make . . . all structural repairs and replacements and all repairs and replacements to the exterior;" the tenant A&P is responsible for "interior non-structural repairs and replacements," which includes "repairs to the . . . interior plumbing;" and the "Condominium Board" is required "to make all necessary repairs and replacements to the water [and] sewer . . . system[s] serving the Demised Premises." (Def's 56.1 Ex H.)

(finding that "the out-of-possession defendant owner could not be liable for the claimed inadequate lighting, despite its right to reenter under the lease, because the defendant tenant controlled the lighting level at its restaurant, and inadequate lighting does not constitute a significant structural or design defect that violates a specific statutory building code provision"). Plaintiff has thus failed to introduce any evidence that would warrant a finding that his accident was caused by a defect requiring a "structural repair[] and replacement[]," or a "significant structural or design defect that is contrary to a specific statutory safety provision." These failures warrant dismissal of this case as a matter of law. *See Yadegar v. Int'l Food Mkt.*, 830 N.Y.S.2d 244, 244 (2nd Dep't 2007) (finding that "although [the defendant] retained a right to re-enter the premises, the plaintiffs did not allege the violation of a statutory provision and presented no evidence demonstrating that the raised and broken asphalt in the parking lot constituted a significant structural or design defect").

Finally, although Plaintiff argues that the evidence in the record "creates a clear question of fact with regard to whether or not the defendant was on notice of the hazardous conditions prior to the plaintiff's fall" (Pl.'s Opp'n at 7), the question of notice is irrelevant absent any duty to maintain or repair the allegedly defective handle. *Cf. Lowe-Barrett v. City of N.Y.*, 815 N.Y.S.2d 630, 630 (2nd Dep't 2006) (finding that "[o]nce it was established that the out-of-possession landlord had relinquished control over the premises and, thus, had no duty to maintain or repair the premises, the question of notice was rendered academic").

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment. Accordingly, the motion located at docket number 25 shall be terminated. The Clerk of Court shall enter judgment accordingly and this case shall be closed.

SO ORDERED.

Dated:   November 16, 2009
         New York, New York

                                                RICHARD J. SULLIVAN
                                                UNITED STATES DISTRICT JUDGE